UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PAREDEZ, | No. C 11-3351 SI (pr) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| ANTHONY HEDGPETH, warden; et al., | |
| Defendants. | |

## INTRODUCTION

Richard Paredez, an inmate at the R. J. Donovan Correctional Facility, filed a *pro se* civil rights action under 42 U.S.C. § 1983 to complain about the conditions of confinement at Salinas Valley State Prison, where he previously was incarcerated. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

In his complaint, Paredez complains that his medical needs were not adequately addressed by Salinas Valley State Prison medical staff in the August 2010 - January 2011 period. His complaint alleges the following:

Paredez filed a request for medical care on August 15, 2010 for severe back pain. Dr. Tuvera said he was already on a high dose of morphine and sent him back to his cell. Thereafter, Paredez continued to request care for severe back pain in September 2010. He went to the correctional treatment center, where Dr. Bridgenelle gave him a shot of Toradol, but lowered his

other pain medication. Docket # 1, pp. 20-21. Paredez returned to the emergency room two more times in September because the cause of his pain had not been diagnosed. On October 8, 2010, Paredez was sent to an outside hospital, where he was diagnosed with osteomyelitis, which "validated" his complaints of increased acute pain. *Id.* at 21.

On October 20, 2010, correctional officers required a nurse, or a nurse decided, that Paredez's medication had to be crushed before distribution, which was false.

On October 22, 2010, Paredez was interviewed by Dr. Bright for his inmate grievance. Dr. Bright was upset when Paredez refused to withdraw his grievance, and directed that Paredez's wheelchair and cane be confiscated.

After going to an outside facility for antibiotic treatment on October 27, 2010, and then going to the California Men's Colony, Paredez returned to Salinas Valley State Prison on November 15, 2010. On November 19, 2010, Paredez told Dr. Tuvera that he had learned from another doctor that he had Valley fever and inquired why he hadn't been treated for it. Dr. Tuvera said he would attempt to procure a walker for Paredez's mobility problems. On November 22, Dr. Bright denied the request for the walker. Dr. Bright later denied an inmate appeal about the issue, and indicated it was because Paredez had not withdrawn his inmate appeal. At a later interview on December 17, Dr. Bright told him all his pain medication would be discontinued because he reportedly had been diverting his medications (which was a false accusation). Dr. Bright again asked Paredez whether he regretted not withdrawing a grievance.

On December 24, 2010, Dr. Bright did a pain management review of Paredez's file and sent him a notice falsely stating that Paredez had been found guilty of diversion of pain medication and would be weaned of all pain medications. This was inconsistent with CDCR policy, which required only that medications be crushed for an inmate found guilty of diverting medications.

On January 4, 2011, Dr. Tuvera told him that he could rewrite a prescription for pain treatment, but Dr. Bright would not approve it. Someone wrote a prescription for Tylenol instead of morphine to avoid a confrontation with his supervisor. *See id.* at 26. Dr. Tuvera prescribed "methodine" on January 11, 2011, after observing Paredez's pain level. *Id.* at 27.

2

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Accordingly, evaluating a claim of deliberate indifference necessitates examining "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Estelle*, 429 U.S. at 104). A prison official exhibits deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health. *See Farmer*, 511 U.S. at 837.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

3

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Liberally construed, the complaint states cognizable § 1983 claims against Dr. Bright for deliberate indifference to serious medical needs and retaliation. On and after October 22, 2010, Dr. Bright allegedly retaliated against Paredez for his refusal to withdraw a grievance by causing his wheelchair and cane to be confiscated, and by manipulating an unfounded allegation to justify the discontinuance of Paredez's pain medication. Dr. Bright also allegedly was a driving force in Paredez not receiving adequate pain medication on and after November 19, 2010.

Liberally construed, the complaint also states cognizable § 1983 claims against Dr. Tuvera for deliberate indifference to serious medical needs and retaliation. Dr. Tuvera allegedly ignored Paredez's requests for care for his pain and refused to run diagnostic tests from August 15 through October 8, 2010. Dr. Tuvera also allegedly retaliated against Paredez in response to Paredez's past complaints about medical care, "useing (sic) set treatment for plaintiff's acute pain to coerce plaintiff to withdraw past complaints" about health care. Docket # 1, p. 10. And Dr. Tuvera allegedly failed on November 19 and January 4 to provide an adequate level of pain medication for Paredez's pain.

Liberally construed, the complaint also states cognizable § 1983 claims against Dr. Mack for deliberate indifference to serious medical needs and retaliation. Dr. Mack allegedly discontinued his "set treatment for Valley fever 'cocci.'" Docket # 1, p. 13. Paredez alleges that his spinal infection was due to, or stemmed from, the Valley fever. Dr. Mack also allegedly discontinued and/or reduced Paredez's pain treatment because Paredez filed an inmate appeal against Dr. Mack for discontinuing his Valley fever medication.

Liberally construed, the complaint also states a § 1983 claim against Dr. Bridgenelle for deliberate indifference to serious medical needs. Dr. Bridgenelle allegedly reduced his pain medication to punish him for being admitted to the central treatment center on an emergency basis instead of on a scheduled appointment even though Paredez was in extreme pain. *See*

4

Docket # 1, p. 15. Even with liberal construction, the allegations do not state a § 1983 claim against Dr. Bridgenelle for retaliation because it was not a First Amendment protected activity that allegedly motivated the doctor.

Liberally construed, the complaint also states cognizable § 1983 claims against nurse Steele for deliberate indifference to serious medical needs and retaliation. Nurse Steel allegedly falsified documents to have his pain medication discontinued. He/she did this in order to retaliate against Paredez because he complained about Steel's attitude and treatment of him and other inmates.

The allegations that the administrative appeals were not properly handled do not state a due process claim against any defendant. There is no constitutional right to a prison or jail administrative appeal or grievance system in California. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); Cal. Code Regs. tit. 15, §§ 3084.1. Paredez had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to handle it in a particular way therefore did not amount to a violation of his right to due process. Although there is no due process violation, the handling of the grievances and appeals Paredez filed may be relevant to the other claims, as they may be probative of retaliation or deliberate indifference.

Paredez names Anthony Hedgpeth, the warden of Salinas Valley, as a defendant and alleges he failed to adequately supervise his subordinates but does not allege that Hedgpeth played any role in Paredez's care. Supervisor defendants are entitled to qualified immunity where the allegations against them are simply "bald" or "conclusory" because such allegations do not "plausibly" establish the supervisors' personal involvement in their subordinates' constitutional wrong. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-52 (2009) (noting no vicarious liability under § 1983 or *Bivens* actions). So it is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging "a *specific* policy" or "a *specific* event" instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937 (9th

5

1 Cir. 2012) (emphasis in original). Hedgpeth is dismissed from this action because the conclusory allegations against him to not plausibly establish his personal involvement in the alleged constitutional violations.

Finally, exhibits B and C to plaintiff's complaint list numerous documents relating to his claims. It is not clear whether plaintiff intended to attach those numerous documents, or simply to list them. He is informed, however, that the documents listed on exhibits B and C to his complaint were **not** attached to the complaint and are not in the court file.

## CONCLUSION

1. The complaint states cognizable § 1983 claim against defendants Bright, Tuvera, Mack, Bridgenelle and Steele. All other defendants are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint and a copy of all the documents in the case file upon the following persons, all of whom apparently work on the medical staff at Salinas Valley State Prison:

- Dr. D. Bright (chief physician)
- Dr. Fernando Tuvera
- Dr. R. Mack
- nurse Steel (a registered nurse)

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

  a. No later than **June 22, 2012**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due.

  b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **July 27, 2012**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

6

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (*See Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).)

Plaintiff also should take note that a defendant may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, result in the termination of the action. The plaintiff must "develop a record" and present it in his opposition to dispute any "factual record" presented by a defendant's motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

      c.     If defendants wish to file a reply brief, the reply brief must be filed and served no later than **August 13, 2012**.

    4.     All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

    5.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

    6.     Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely

7

fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

7.     Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: March 29, 2012

_____
SUSAN ILLSTON
United States District Judge